McFAUL, Appellant, vs. EAU CLAIRE COUNTY, Respondent.

*April 8—May 7, 1940.*

For the appellant there was a brief by *Stafford & Stafford,* attorneys, and *John Frampton* of counsel, all of Chippewa Falls, and oral argument by *Mr. Harold E. Stafford* and *Mr. Frampton.*

For the respondent there was a brief by *Connor Hansen,* district attorney, and *Roy P. Wilcox* and *Francis J. Wilcox,* special counsel, and oral argument by *Mr. Hansen* and *Mr. Francis J. Wilcox.*

WICKHEM, J. The principal question in this case is whether, by adverse possession under color of title, plaintiff has cut off the right of defendant and its ancestors in title to flow lands which plaintiff occupies as a farm and home. There is no material dispute in the facts. Prior to 1897 the farm in question was owned by Alice and John Ward. On November 9, 1897, they conveyed to Northwestern Lumber Company and took back a ninety-nine-year lease to Alice Ward, reserving to the Northwestern Lumber Company the right to flood or overflow the lands or any part thereof at any or all times or continuously. The only rental exacted was the payment of taxes by the lessee. The lease was duly recorded. On March 19, 1904, Alice Ward conveyed the premises by warranty deed to W. E. Jurden. On December 13, 1912, Jurden and his wife conveyed by warranty deed to James L. McCann. On June 18, 1914, McCann and wife conveyed by warranty deed to R. L. McFaul and Marie E.

McFaul (plaintiff) as joint tenants. R. L. McFaul died July 9, 1924, plaintiff surviving him. The deeds were all properly recorded. During these various ownerships, mortgages were executed upon the premises and paid off. At the time of purchase plaintiff had no actual knowledge of the lease or flowage rights, but she discovered the facts about four or five years after she entered possession. Plaintiff continued to live upon the premises and to conduct it as a farm, but never notified the Northwestern Lumber Company that she claimed any rights in opposition to the lease. Her possession has been continuous from 1914 until the present time. On May 14, 1929, Northwestern Lumber Company quitclaimed its entire interest in the lands to the Chippewa Valley Construction Company, and that company leased all of its interests to defendant March 21, 1939. Defendant erected the dam in question, and when put into operation this dam will overflow fifty-two and one-half acres of plaintiff's one-hundred-eighteen-acre farm.

Plaintiff's claim that her possession has cut off all rights under the lease as well as all flowage rights is based upon the contention that sec. 330.06, Stats., as construed by *Illinois Steel Co. v. Budzisz,* 139 Wis. 281, 119 N. W. 935, 121 N. W. 362, confers absolute title without exceptions or reservations upon one who holds under color of title for ten years. This section provides as follows:

"Where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment or of some part of such premises under such claim for ten years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots the possession of one lot

shall not be deemed the possession of any other lot of the same tract."

It is claimed that under this section the McFauls entered into possession under a full warranty deed claiming full title, and that the occupation and possession of the lands for ten years under such deed is characterized as adverse by sec. 330.06, Stats. The reliance of defendant is upon sec. 330.11, Stats., which provides as follows:

"Whenever the relation of landlord and tenant shall have existed between any persons the possession of the tenant shall be deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy; or where there has been no written lease until the expiration of ten years from the time of the last payment of rent, notwithstanding such tenant may have acquired another title or may have claimed to hold adversely to his landlord; but such presumption shall not be made after the periods herein limited."

Plaintiff claims that the *Illinois Steel Co. Case, supra,* specifically deals with both contentions and decides the issue adversely to defendant. In that case the court said (pp. 293, 295, 333, 339):

"If A, having possession of real estate as tenant of B, the owner, conveys the same in writing to C, he having no notice of the relation of landlord and tenant as between A and B, and C, under his conveyance, takes possession of the property, claiming title by no right except that purported to be conferred by his writing, and he remains in such possession as an exclusive owner might, continuously for the full period of ten years,—does he thereby acquire title in fact, good as against the former owner B, regardless of the relations existing between the latter and A, at the time he obtained his conveyance? . . .

"No one will claim that, in its letter, the statute goes further than to affect tenants at first hand, so to speak, and those taking under them as tenants. The words 'whenever the relation of landlord and tenant shall have existed between any persons the possession of the tenant shall be deemed the possession of the landlord,' etc., if applied to any other than

a tenant in fact, extended by mere construction to include a possessor under the tenant not as such, but as owner, the grantee having no knowledge of the tenancy, ingrafting the common-law rule upon the statute, when by proper rules for construction it was abrogated by not being incorporated in the statute, and the same method of dealing with statutes be persisted in as to our other plain written laws affecting realty,—the result would be to defeat the very purpose of the statute makers, as will be seen.

"Sec. 4211 declares, as plainly as by words it could well be done, that if one takes possession of realty, claiming the same under a written instrument, as being a conveyance thereof to him, and exclusive of any other right, he becomes an adverse possessor. It admits of no exception in its letter. This court has said, it admits of no exception by construction; that it was phrased as we find it, in order that it might be understood easily, of all men, as eliminating the ancient doctrine that the person taking possession must do so in good faith. . . .

"[Upon rehearing.] If a person under any kind of a written instrument sufficient to convey title to realty and purporting to do so takes possession of a tract of land described therein, as owner, even from a tenant, and regardless of good faith, *openly and hostile to the possessor of the title, under such circumstances as to challenge the right of the latter to his knowledge, if he pays reasonable attention to* his affairs, adverse possession is initiated. . . .

"This . . . is not a case of a tenant or his successor in possession, originating a claim of adverse possession, but of a possession commencing under an assertion, in the very nature of the case, of hostile title, *the grantee having no notice of the tenancy and under such circumstances, as in this case, necessarily bringing home to the holder of the legal title notice of the hostile invasion.*"

In this case plaintiff had constructive notice when she entered possession under her deed that there had been a lease with a reservation of flowage rights. She had actual notice of these facts within four or five years of the time when she entered possession. It will be noted from the above quotation that the doctrine of the *Illinois Steel Co. Case, supra,*

appears to give some importance to the fact that the adverse claimant under color of title had no notice of the existing tenancy. The importance of notice of the tenancy of a grantor is that a grantee from the tenant entering the possession of land under color of title, without such notice, is not in a position to bring home to the lessor notice of the adverse character of his possession except by the exercise of such acts of ownership as would normally be notice to an owner that an adverse claim was being asserted. In view of this, it might reasonably be questioned whether the constructive notice by reason of the recording of the ninety-nine-year lease would have the same effect as actual notice. We do not find it necessary, however, to determine this question because in any event there was nothing in the character of plaintiff's possession and use that was inconsistent with a tenancy or that constituted any notice of hostile invasion to the holder of the legal title. The only rent reserved was the payment of taxes, and there had been no default as to this. The land was possessed by the original tenant for farming purposes, and this use was continued without change. The recording of the deeds did not constitute notice to the holder of the legal title because the statute (sec. 235.49) makes such recording notice only as to subsequent purchasers. During the years of plaintiff's occupancy there had been no efforts by the holder of the legal title to exercise its rights of flowage and consequently no opportunity for plaintiff to resist and thereby bring home to the holder of the legal title notice of the adverse claim.

It is our conclusion, therefore, that under the facts of this case the trial court properly concluded that there had been no adverse possession effective to establish plaintiff's title. It follows that plaintiff has no greater rights in the premises than those of an assignee of the original lease.

Plaintiff next contends and argues at considerable length, (1) that defendant had no power to build the dam by which the flooding of plaintiff's land will be accomplished; (2) that

defendant had obtained no legal permit from the public service commission for the maintenance of the dam; (3) that the contract by which plaintiff acquired flowage rights was void as against public policy; and (4) that maintenance of the dam is in violation of federal law. We are of the opinion that plaintiff has no standing to raise any of the foregoing questions in this action. Plaintiff, claiming ownership of certain land, sues to enjoin the flowing of that land by defendant, who claims and has established its right to flow the land. This determination establishes that plaintiff has no private right which she is entitled to have vindicated. It is no private concern of plaintiff that the county has not power to build a dam, or that it has not obtained a proper permit, or that its contract for flowage rights is against public policy, or that the maintenance of the dam is in violation of federal law. The wrong, if there be any, based upon plaintiff's contentions, does not arise out of the act of flowing plaintiff's land, for this the county was privileged to do as against plaintiff. The wrong, if any, is to taxpayers as a class and would be grounded upon the county's intention to enter an unlawful or unauthorized contract or project involving the expenditure of public funds and increasing the burdens of taxation. As was stated by this court in *Nast v. Eden,* 89 Wis. 610, 612, 62 N. W. 409:

"It is too plain for argument that the injury which the plaintiff will suffer from the anticipated action of the town board is not an injury to any private right of the plaintiff, but simply (if any injury at all) one which he suffers in common with all other residents of the town. He cannot maintain a private action to redress or prevent such an injury."

For this reason we find it unnecessary to examine the merits of plaintiff's contentions with respect to the invalidity of the proceedings leading up to the construction of the dam and the want of power in the county to maintain it.

It is finally contended that there is evidence in the record to the effect that employees of the county entered plaintiff's premises and cut wood and that at all events this is a violation of plaintiff's rights. We have carefully examined the pleadings in this case and find no allegations whatever concerning this matter. We conclude that it was not within the issues or disposed of by the judgment herein. In view of the state of the pleadings, the trial court properly ignored this item. Plaintiff's rights to recover for any wood cut upon the place is not foreclosed by the judgment in this action.

*By the Court.*—Judgment affirmed.